**RZS HOLDINGS AVV, Plaintiff,**

v.

**PDVSA PETROLEOS S.A.,
et al., Defendants.**

**Case No. 1:04cv784 (GBL).**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 5, 2009.

___

**3.** This decision applies regardless of whether McCray was in fact a citizen of Virginia or of Louisiana.

Henry St. John Fitzgerald, Office of Henry St. John Fitzgerald, Arlington, VA, for Plaintiff.

Christopher O. Davis, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, New Orleans, LA, Joseph F. Giordano, Semmes Bowen & Semmes PC, Vienna, VA, for Defendants.

## *MEMORANDUM ORDER*

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant PDVSA S.A.'s Motion to Confirm and Plaintiff RZS' Motion to Vacate the Final Arbitral Award rendered by the Arbitral Tribunal in this matter This case concerns Plaintiff RZS Holdings' allegations that arbitrator corruption, bias, and misconduct prohibit this Court from confirming the Final Arbitration Award entered on February 9, 2006. The issues before the Court are whether: 1) confirmation of this Arbitration Award is governed by the Inter–American Convention on International Commercial Arbitration or the Federal Arbitration Act; and 2) under the applicable standard, whether RZS has provided sufficient justification for this Court to refrain from confirming the Final Arbitration Award. The Court holds that: 1) confirmation of this Arbitration Award is governed by the Inter–American Convention on International Commercial Arbitration because the award at issue is non-domestic, the parties are citizens of signatory nations of the Inter–American Convention, and the relevant provisions of the Federal Arbitration Act are in conflict with the relevant provisions

of the Inter–American Convention; and 2) an examination of the extensive record that exists in this matter, along with the pleadings and oral arguments provided by RZS does not justify denial of confirmation of the Final Arbitration Award because none of RZS' allegations may be categorized as any of the enumerated reasons to deny confirmation under the Inter–American Convention. Finally, after affording RZS discovery to support its bellicose claims that the arbitration process was tainted with arbitrator corruption, bias, and misconduct, discovery has shown the claims to be hollow and unfounded.

## I. BACKGROUND

This case stems from a contract between the parties for the sale of unleaded gasoline. Upon PDVSA's termination of the contract, RZS filed claims for breach of contract in state and federal court. After settlement agreements fell apart, RZS once again brought suit in state court (having dismissed the original suits) alleging breach of both the gasoline contract and the settlement agreements. PDVSA removed the matter to the Eastern District of Virginia and subsequently sought a stay of the litigation pending arbitrations proceedings provided for in the gasoline contract. The case was stayed and the parties proceeded to arbitration.

Arbitration commenced in the ICC International Court of Arbitration in the fall of 2004 and an arbitration award was entered in favor of PDVSA on February 9, 2006. During the course of the arbitration, one of the arbitrators, Manfred Arnold attended a Society of Maritime Arbitrators and Mexican Maritime Law Association meeting that was also attended by an attorney employed by PDVSA. The parties do not dispute that during the course of this conference Mr. Arnold had lunch at the meeting with a group of attendees including PDVSA attorney, Walter la Madriz (who was not involved in the arbitration at issue in this case). Mr. Arnold and Mr. la Madriz exchanged contact information and engaged in conversation with the group. RZS would later bring this perceived impropriety to the attention of the ICC, who in turn declined to conduct a full scale investigation, and found RZS' grievance to be without merit. At the close of the arbitration proceedings both parties confirmed to the arbitrators that they were satisfied with the manner in which the proceedings were conducted and believed that the proceedings had been fair. In the interim between the conclusion of the proceedings and the issuance of the arbitration award, RZS alleges that it came into possession of a draft copy of the arbitration award and complained to the ICC that the premature draft release reflected corruption. The ICC considered RZS' corruption accusation, questioned the arbitration panel and ultimately concluded that RZS' claim was without merit. Despite numerous requests, RZS refused to disclose the names of its source that provided it with the draft award. The Final Arbitration Award closely approximated the draft received by RZS in advance.

Due to a fee dispute, RZS' attorney, George Doumar sought to withdraw his representation in both the arbitration and district court matters prior to the entry of the Final Arbitration Award. As a result, Gabriel Deeb began filing pro se pleadings on behalf of RZS in this Court. On March 13, 2006, before Mr. Doumar filed his motion to withdraw, Mr. Deeb filed motions seeking to lift the stay, vacate the arbitration award, and award RZS damages. At the time a debate arose as to whether it was permissible and appropriate for Mr. Deeb to represent RZS pro se, as he was not a licensed to practice law before the Court. At a hearing on April 28, 2006, this Court granted Mr. Doumar's motion to

withdraw, declined to permit Mr. Deeb to file motions or meaningfully participate in the proceedings, and granted PDVSA's Motion to Confirm the arbitration award.

On appeal the Fourth Circuit found that "the district court committed prejudicial error, abusing its discretion in failing to grant RZS a reasonable continuance to secure replacement counsel and in conducting ex parte proceedings on the merits of the case." *RZS Holdings v. PDVSA Petroleo S.A.*, 506 F.3d 350, 358 (4th Cir. 2007). On remand the Court held a status conference in order to outline the remaining unresolved issues. In the course of this status conference RZS requested the Court's permission to conduct post-arbitral discovery, a request that was subsequently denied by the Court. *RZS v. PDVSA*, No. 04–784 (E.D.Va. Feb. 6, 2008) (order denying RZS' request to conduct post-arbitral award discovery). In accordance with the briefing schedule established by the Court, the parties submitted written briefs outlining their positions on confirmation on the arbitration award. Oral argument took place on June 9, 2008, and on June 18, 2008, counsel for RZS filed a Post–Argument Brief for Vacating the Award, and on July 1, 2008, RZS filed the Declaration of Gabriel Deeb (a copy of this declaration was presented to the Court on the date of oral argument, and counsel was instructed then to file an original with the Court). On October 7, 2008, the Court entered an Order sua sponte reconsidering its prior order denying post-award discovery. The October 7, 2008 Order allowed the parties to take depositions of certain named individuals [1], and set deadlines by which the depositions were to be taken and any supplemental position statements were to be filed. The Court specifically stated in the

Order that it would not entertain any tardy filings.

## II. DISCUSSION

### A. Standard of Review

■ An arbitration award that is not vacated or modified, may be confirmed by a court. "The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984). Under the Inter–American Convention, a district court's role in reviewing an arbitral award is strictly limited. The court is required to confirm the award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [Inter–American] Convention." 9 U.S.C. § 302 (incorporating 9 U.S.C. § 207); *see also Employers Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 942 (7th Cir.1999).

### B. Analysis

■ The Court holds that the terms and provisions of the Inter–American Convention on International Commercial Arbitration ("the Inter–American Convention" or "Chapter Three") govern this arbitral award, and not Chapter One of the Federal Arbitration Act ("FAA" or "Chapter One") because this is an international arbitration, the parties are citizens of countries that are signatories of the Convention, and there is a conflict between the provisions of the Chapter One and Chapter Three and in the event of such a conflict, the terms of Chapter Three govern. International arbitral awards are governed by 9 U.S.C. §§ 201–208 ("the New York Con-

---

1. Specifically, the parties were granted leave to take the depositions of Walter La Madriz, any attorney(s) that RZS believed were re-

sponsible for the release of the draft award, Arbitrator Arnold, and the other arbitrators, subject to certain delineated parameters.

vention" or "Chapter Two") and 9 U.S.C. §§ 301–307 ("the Inter–American Convention" or "Chapter Three"). When the requirements for the application of both Conventions are met, "[i]f a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter–American Convention, and are member States of the Organization of American States, the Inter–American Convention shall apply." 9 U.S.C. § 305(1). Sections 202, 203, 204, 205 and 207 of Title IX are incorporated into the Inter–American Convention by reference. 9 U.S.C. § 302. Chapter One is incorporated into Chapter Three to the extent that its provisions are not in conflict with those announced in Chapter Three. 9 U.S.C. § 307.

■ The arbitral award presently before the Court is an international award subject to the provisions of the Inter–American Convention because it is non-domestic in nature, and because both Venezuela and the United States are signatories of the Inter–American Convention. Awards are considered non-domestic and thus governed by one of the Conventions when they are "made within the legal framework of another country, e.g., pronounced in accordance with foreign law *or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction.*" *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte,* 141 F.3d 1434, 1441 (11th Cir. 1998).[2] PDVSA's representation that the arbitration at issue here "was conducted in conformity with the Rules of the International Chamber of Commerce Internation-al Court of Arbitration located in Paris, France ... and was governed by English law" is uncontradicted. (PDVSA Mem. Supp. Previous Mot. Confirm 10 n. 18). Furthermore PDVSA has its principal place of business in Venezuela. Therefore this arbitration, must be designated as international, not domestic, and subjected to the terms of either the New York or Inter–American Convention. As mentioned previously, when the parties to an arbitration are citizens of countries that are signatories of the Inter–American Convention, the terms of the Inter–American Convention govern. RZS was established in the Commonwealth of Virginia, and has its principal place of business therein. As previously noted, PDVSA is established under the laws of Venezuela and has its principal place of business therein. Therefore, for purposes of this analysis, the Court finds RZS to be a citizen of the United States, and PDVSA a citizen of Venezuela. Both countries are signatories of the Inter–American Convention, and therefore it provides the governing framework for this analysis.

The Court recognizes that under 9 U.S.C. § 307, the provisions of Chapter One apply to the extent that they are not in conflict with Chapter Three.[3] On this score the Court follows the line of case law from the Sixth, Seventh and Eleventh Circuits holding that such a conflict does in fact exist, based on a reading of the language of 9 U.S.C. § 207 that indicates that the reasons enumerated in Article V of the Inter–American Convention provide the

---

2. The Court recognizes that the Fourth Circuit has not addressed this issue and is inclined to follow the definition set out by the Eleventh Circuit The Court notes that the Eleventh Circuit in *Industrial Risk* indicated that it was joining the First, Second, Seventh and Ninth Circuits in adopting this definition. *Industrial Risk,* 141 F.3d at 1441.

3. The Fourth Circuit has not addressed the issue of whether such a conflict exists. The Eastern District of Virginia has acknowledged the rule, without resolving the issue of whether a conflict in fact exists. *Al–Haddad Commodities v. Toepfer Int'l Asia Pte,* 485 F.Supp.2d 677, 681 n. 4 (E.D.Va.2007).

exclusive list of grounds to vacate international arbitration awards.[4]

Before concluding its analysis on this point, the Court distinguishes the oft-discussed case out of the Second Circuit, *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us*, 126 F.3d 15 (2d Cir.1997). There the court was faced with the question of whether Article V(1)(e) of the New York Convention[5] "authorize[d] an action to set aside an arbitral award under the domestic law of the state in which or under which the award was rendered." *Id.* at 20. The Second Circuit read Article V(1)(e) to "allow a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate that arbitral award." *Id.* However, the court also noted that "Article V(1)(e) would apply to the state that supplied the arbitral law under which the award was made. This situation may be so rare as to be a dead letter." *Id.* at 21 n. 3 (internal citation omitted). The Court declines to delve further into this issue or follow this line of thinking for several reasons. First, the Court notes that it previously mentioned that this arbitration was governed by English law. Therefore, even if this Court were inclined to adopt the holding in *Toys "R" Us*, it is likely inapplicable in this instance. Secondly, the Court notes the negative history associated with this case, in that several other circuits have declined to follow this case, and its holding has been called into question by the Second Circuit itself.[6] That negative history coupled with the fact that a decision from the Second Circuit is not binding upon this Court, support a determination not to adopt this decision, while simultaneously noting that in the alternative, even if it's holding where considered, it would be unlikely to result in a different outcome under this set of facts.

■ The Court denies RZS' Motion to Vacate and grants PDVSA's Motion to Confirm the Arbitration Award because none of the claims presented by RZS in support of its motion constitute one of the seven enumerated reasons under the Inter–American Convention for vacating an international arbitral award. Those seven reasons enumerated in Article V of the Inter–American Convention are as follows:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought proof that:

---

**4.** In accordance with 9 U.S.C. § 302, 9 U.S.C. § 207 is incorporated by reference into Chapter Three, "except that for the purposes of this chapter, 'the Convention' shall mean the Inter–American Convention." 9 U.S.C § 307 Courts have construed the word "shall" in 9 U.S.C. § 207 to indicate that the enumerated list in Article 5 is the exclusive grounds for vacatur, and because the reasons for vacatur provided in Chapter One are distinguishable from if not contrary to the reasons provided in Article V, a conflict must be found to exist. *See Industrial Risk*, 141 F.3d at 1446; *M & C Corp. v. Erwin Behr*, 87 F.3d 844, 851 (6th Cir.1996); *Employers Ins. of Wausau*, 199 F.3d at 942.

**5.** The language contained in Article V(1)(e) of the New York Convention and Article V(1)(e) of the Inter–American Convention are virtually identical.

**6.** *See Westerbeke Corp. v. Daihatsu Motor Co. Ltd.*, 304 F.3d 200, 222 (2d Cir.2002) (questioning the sagacity of conflating the requirements for confirmation of an arbitration award under the FAA with those imposed by other statutes and the continued application of *Toys "R" Us* in light of subsequent Second Circuit cases emphasizing the importance of acknowledging the distinct requirements of different arbitration statutes).; *see also China Minmetals Materials Import & Export Co. Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 284 (3d Cir. 2003).

a. The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

b. The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

c. The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decision on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

d. The composition of the arbitral authority procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

e. The award has not yet become binding on the parties, or has been set aside of suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

a. The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

b. The recognition or enforcement of the award would be contrary to the public policy of that country.

Organization of American States, Inter–American Convention on International Commercial Arbitration art. 5, Jan. 30, 1975, 104 Stat. 448, O.A.S.T.S. No. 42. RZS has presented three occurrences that it believes warrant vacating the award.[7] Namely, RZS argues that the award should be vacated because: 1) one or both of the parties received a draft copy of the award prior to its official publication; 2) Arbitrator Arnold attended a professional association conference where he interacted with a PDVSA attorney who is not involved in this litigation; and 3) PDVSA paid the entire cost of the arbitration when RZS was incapable of paying its share of the costs. A thorough examination of RZS' multiple filings reveal that despite the lack of binding Fourth Circuit precedent on whether Chapter One or Chapter

---

**7.** RZS has advanced an abundance of complaints regarding the arbitration process throughout this litigation. In this Court's Order dated January 17, 2008, the parties were ordered to brief their positions on the pending Motion for Confirmation of the Arbitration Award. The Court's subsequent October 7, 2008 Order allowed the parties to submit supplemental briefs encompassing any information obtained via deposition, to be filed by December 6, 2008. The Court confines its consideration to the arguments submitted in the briefs filed in accordance with the January 17, 2008 and October 7, 2008 Orders. Despite these explicit instructions RZS has unjustifiably deemed it appropriate and permissible to inundate the Court with several improperly filed documents that are devoid of recently discovered and previously undiscoverable information that would justify such filings. The impropriety and shortcomings of these pleadings will be addressed later in this Memorandum Opinion.

Three dictated the result in this matter, counsel for RZS failed to present his arguments in the alternative, under both potentially applicable frameworks, and unwisely elected to proceed exclusively under the grounds for vacatur provided in the FAA. RZS has failed to present argument connecting its proposed grounds for vacatur to any of the enumerated grounds for vacatur provided in Chapter V of the Inter–American Convention. The Court believes it would be justifiable to end its analysis here and find that vacatur under Article V of the Inter–American Convention is unfounded. However, in an abundance of caution, and owing to a desire to see this lengthy dispute come to a close, the Court engages in a substantive analysis of the grounds asserted by RZS as they relate to the Inter–American Convention.

The Court holds that RZS' contention that the award should be vacated due to the premature release of the award to the parties does not state a cause for vacatur under the Inter–American Convention because it does not fall under any of the enumerated grounds for vacatur and because RZS has presented insufficient support for the Court to find that this claim has any merit. RZS has been afforded multiple opportunities to present evidence of arbitrator corruption, bias, and/or misconduct to the ICC and to this Court and has failed to do so. Only RZS knows how and from whom it allegedly received a draft of the arbitration award and RZS refuses to produce this information. RZS has provided nothing that rises above the level of speculation as to the origins of the draft award. It has provided multiple written statements from parties both identified and unidentified [8] that, while alleging that the draft copy resided with PDVSA before being obtained by RZS fail to give *any* indication as to *how* the copy came

into PDVSA's possession. It is impossible for this Court to know how this draft copy was released to *anyone*. There are a variety of possible explanations for this occurrence, some pointing to foul play, others far more innocent. While acknowledging RZS' accusations that Arbitrator Arnold is responsible for the leak, this Court notes that despite ample opportunities to do so, RZS refuses to provide any evidence of who received the draft. The draft of the decision leaked, substantially tracks the final ICC decision. During the course of the ICC inquiry into RZS' complaint, Mr. Arnold, the arbitrator accused of being the source of the leak, submitted a letter to the ICC, wherein he expressly denies any involvement in the release of the materials. Mr. Arnold testified under oath at his deposition that he was not involved in a leak of the draft award. RZS proposed during the limited discovery authorized by these proceedings to seek to have an anonymous deposition, where the witness would testify without identifying him/herself. The Court declines to allow a witness to testify under a pseudonym, as proposed by RZS, because such a procedure would deny PDVSA of its right to confrontation of the witness and right to inquire into the witness' identity and any motivation the witness may have to testify. RZS has not presented any evidence that the decision was influenced by bribery or corruption. RZS' inability and unwillingness to lay before the Court sufficient facts to support its otherwise bare allegations and rife speculation prevent this Court from giving any sort of significant or substantive consideration to this claim as a basis for vacating the award. Furthermore even if the Court were to find that the draft award were improperly or unjustifiably released to one of the parties prior to its

---

**8.** Most recently, on August 29, 2008, RZS has provided the Court with a copy of a statement that is initialed by someone operating under an alias.

official release, it is unclear how this would justify vacatur under the provisions of Article V of the Inter–American Convention.

Furthermore the Court holds that Mr. Arnold's interaction with a PDVSA attorney at a professional association seminar held in Manzanillo, Mexico on March 9–11, 2005 that was co-sponsored by the Society of Maritime Arbitrators of New York[9] and the Mexican Maritime Law Association during the pendency of this arbitration also fails to present a justification for vacatur under the provisions of Article V for virtually the same reasons the Court declined to find a reason for vacatur on the previous allegations. RZS has presented no substantive assertions regarding this interaction. The Court has reviewed the transcript of Mr. Arnold's deposition where he testified under oath that he never spoke directly with the attorney from PDVSA, Walter la Madriz who was in attendance.[10] Mr. Arnold has completely

described this interaction, which was limited to their presence at the same lunch table with several other conference attendees, where the attendees exchanged business cards.[11] No evidence has been presented that would support a conclusion that there was anything improper about this interaction, and certainly nothing that would support this Court vacating the arbitral award.

In *Nicor International v. El Paso Corporation*, the District Court for the Southern District of Florida was presented with petitioners' claims that an arbitrator was biased based on prior representations of corporations in the same field as the corporation involved in the arbitration, and that such a bias was a violation of public policy meriting vacatur under Article V(1)(d) of the New York Convention.[12] 292 F.Supp.2d 1357, 1374 (S.D.Fla.2003). The court in *Nicor* declined to vacate the award finding that petitioners did not

**9.** Mr. Arnold has been a member of the Society of Maritime Arbitrators since 1971 and a five-term president of its Board of Governors. (PDVSA Mem. Supp. Previously Filed Mot. Conf. Arb. Award, 18).

**10.** In the deposition of Mr. Arnold, the following exchange took place: "Q: Did you have any conversation about getting together later? A: As I said to you, the man didn't speak any English. I had—I never got closer to him than sitting at the opposite side of the table. I never exchanged a word with the man.... Q: And you spoke through the translator? A: No, I listened to what—I did not ask the questions. I didn't do anything, because I was part of the program. I was busy. We were having lunch. I was sitting with friends at the table and this man was sitting at the opposite table. I never exchanged any words with him. Q: So whatever you said in English, he translated into Spanish for Mr. La Madriz? A: I have no idea what the man did, because I did not direct any questions or statements to Mr. La Madriz." Transcript of Manfred Arnold Deposition at 44, 45 (Nov. 12, 2008).

**11.** During his deposition Mr. Arnold described his interaction with Mr. la Madriz as follows: "It was at a lunch break ... And it was an open seating table that had approximately 10, 12 people sitting at the table. There was Mr. Madriz, La Madriz was sitting at the opposite end of the table with a Mexican delegate." Transcript of Manfred Arnold Deposition at 45 (Nov. 12, 2008). The following exchange occurred regarding the exchange of business cards: "Q: Was there any reason why you would exchange business cards? A: I think it was nothing more than a social nicety ... Q: You wanted him to have some way to contact you later? A: No. And I didn't expect a Christmas card from his either, no. Q: And you wanted to have a card from him so you might contact him later? A: No, not really." Transcript of Manfred Arnold Deposition at 44, 45 (Nov. 12, 2008)

**12.** The substance of Articles V(1)(d) of the New York and Inter–American Conventions are sufficiently similar that the Court finds it appropriate for the analysis of a claim under Article V(1)(d) of the New York Convention to be instructive in an analysis under Article V of the Inter–American Convention.

"provide any evidence to show that the Sole Arbitrator's past representation of energy corporations influenced his decision-making process or his findings and conclusions." *Id.* at 1375. Similarly, the Court finds that RZS has presented no indication that Mr. Arnold's contact with a PDVSA attorney, not involved in the arbitration at a group luncheon, in any way influenced Mr. Arnold's decision-making, findings or conclusions. The arbitration award was unanimous and RZS makes no claim that the other two arbitrators were biased.[13] The Court therefore declines to vacate the award due to Arbitrator Arnold's conversation with a PDVSA attorney who was not involved in the arbitration at a conference hosted by the Society of Maritime Arbitrators, because RZS has failed to show how this interaction in any form or fashion influenced Arbitrator Arnold's decision-making process and therefore have failed to satisfy any of the enumerated reasons for vacatur under Article V of the Inter–American Convention.

Finally, the Court declines to vacate the award under Article V of the Inter–American Convention based on PDVSA's payment of the full cost of the arbitration because there is no indication that this in any way influenced the arbitrators, or that this in some way constitutes any of the enumerated reasons for vacatur. Once again, the Court turns to *Nicor*, where petitioners raised similar challenges. There the court was not persuaded by petitioners argument because they had failed to adduce any evidence that would allow the court to conclude that payment of the entire costs by one side had in any

manner influenced the judgment of the arbitrator or caused him to favor the paying party. *Id.* at 1374. This Court is similarly unpersuaded.

In an abundance of caution, and because the Fourth Circuit has not issued a pronouncement on the question of whether and when to apply the FAA versus the Inter–American Convention this Court evaluates RZS' arguments for vacatur under Section 10(a) of the FAA, and still finds no reason to vacate the arbitration award presently before the court.

The Court denies RZS' Motion to Vacate based on RZS' previously addressed allegations concerning Mr. Arnold's meeting and the draft award under Section 10(a)(1) of the FAA because RZS has failed to carry its heavy burden and demonstrate by clear and convincing evidence that the award was obtained by corruption, fraud, or undue means as well as its inability to demonstrate a material relationship between the alleged corruption, fraud, or undue means, and an issue in the arbitration. In order to prevail under 9 U.S.C. § 10(a)(1) and have a court make a finding that "the award was procured by corruption, fraud, or undue means", the following elements must be satisfied: 1) the petitioner must establish corruption, fraud or undue means by clear and convincing evidence; 2) the corruption, fraud or undue means must not have been discoverable upon the exercise of due diligence or during the arbitration; and 3) the petitioner must demonstrate that the fraud materially related to an issue in the arbitration. *Int'l Bhd. of Teamsters, Local 519 v. Unit-*

---

**13.** It is curious that RZS invests so much energy lobbing allegations of bias based on Arbitrator Arnold's negligible contact with Mr. la Madriz when it came to light in recent depositions that the arbitrator appointed by RZS, Philip Lian, had extensive prior (and potentially undisclosed) professional relationships with Mr. Deeb, having worked with Mr. Deeb as a consultant and serving as a professional reference. (PDVSA Supp. Mem. Supp. Mot. Confirm 4–5). Despite this being Mr. Lian's first occasion to serve as an arbitrator, his prior relationship with Mr. Deeb, and his having been appointed by RZS, he too was part of the unanimous award in favor of PDVSA. (*Id.*)

*ed Parcel Serv. Inc.*, 335 F.3d 497, 503 (6th Cir.2003); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988).

Clear and convincing evidence is defined as evidence indicating that the thing to be proved is highly probable or reasonably certain. BLACK'S LAW DICTIONARY (8th ed. 2004). The Court has previously delineated some of the weaknesses in RZS' arguments on these two points. RZS has failed to satisfy the clear and convincing evidence standard because based on the aforementioned gaps and outstanding questions that exist in relation to these allegations, RZS has not come close to demonstrating corruption, fraud, or undue means by clear and convincing evidence.

Furthermore, the events related to the fraud allegations were discovered prior to the entry of the award and brought before the ICC. "[w]here fraud is not only discoverable, but discovered before the award issues and brought to the attention of the arbitrators, generally a disappointed party will not be given a second bite at the apple, provided the response of the arbitrators is fundamentally fair." Thomas H. Oehmke, 4 Com. Arb. § 141.3 (2008) (citing *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir.1992)). RZS takes issue with the ICC's decision not to launch a full scale investigation when presented with RZS' allegations. However, a reading of the arbitration award indicates that these allegations were considered and determined to be baseless. *RZS Holdings AW v. PDVSA Petroleo S.A., Int'l Comm. Arb.* 101–103 (2006).[14] The mere fact that the ICC did not take the action desired by RZS is insufficient justification for this Court to find that the response was fundamentally unfair. Finally, RZS has failed to illustrate how either the interaction between Arbitrator Arnold and the PDVSA attorney or the receipt of a draft award, even if found to be true, were materially related to an issue in the arbitration. Therefore, the Court finds that RZS has failed to delineate a justification for vacatur under 9 U.S.C. § 10(a)(1) because the weak evidence presented by RZS fails to constitute clear and convincing evidence of corruption, fraud, or undue means that was not discovered and considered during the course of the arbitration.

■ The Court denies RZS' Motion to Vacate under 9 U.S.C. § 10(a)(2) where RZS has alleged evident partiality of the arbitrators and the ICC court based on Arbitrator Arnold's conversation with the PDVSA attorney at a professional associa-

14. "17.11 RZS's conduct has lengthened and embittered the proceedings from the outset. Not only has RZS lost on almost every point in issue in the arbitration but: (i) it sought to circumvent the arbitration agreement in the Contract by bringing legal proceedings in the United States against PDVSA and, personally against its officers and employees; (ii) it advanced grossly inflated monetary claims on the basis of extravagant allegations of serious misconduct which such evidence as was adduced did not get within a mile of justifying; (iii) it failed to pay either the initial advance in respect of costs, or the supplementary advance requested by the ICC, leaving it to the Respondent, PDVSA, to have to put up or secure RZS's share so as to ensure that the disputes between the parties were determined by the arbitral tribunal, as provided in the contract; (iv) it launched challenges against two members of the Tribunal which were duly rejected by the ICC Court as lacking foundation; (v) it relied upon documents in the arbitration which the Tribunal was reluctantly driven to conclude were forged; (vi) it indulged in intimidatory tactics in an effort to secure a favourable settlement of its claims; (vii) it received from an unidentified source a copy of a draft of the Tribunal's First Award and has sought to use the same as justification for allegations of impropriety and bias against the Tribunal; (viii) it has engaged in tactics designed to avoid the consequences of what it perceived as a likely adverse award, by attempting to prevent this Award from being finalized and published."

tion conference and the release of the draft award, because the allegations presented in support of these claims are too attenuated and speculative to sufficiently support vacatur under section 10(a)(2). "A party seeking vacatur must put forward facts that objectively demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." *ANR Coal Co., Inc. v. Cogentrix of N.C.*, 173 F.3d 493, 501 (4th Cir. 1999).

A court should examine four factors to determine if a claimant has demonstrated evident partiality: 1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; 2) the directness of the relationship between the arbitrator and the party he is alleged to favor; 3) the connection of that relationship to the arbitration; and 4) the proximity in time between the relationship and the arbitration proceeding.

*Id.* at 500. Finally, "[w]hen considering each factor, the court should determine whether the asserted bias is direct, definite and capable of demonstration rather than remote, uncertain or speculative." *Id.*

The Court begins its analysis in the same place as many other courts who have engaged in this analysis—with a discussion of *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). In *Commonwealth Coatings*, one of the arbitrators had a business relationship with one of the parties to the arbitration that was not revealed by the arbitrator or the party prior to the issuance of the award. The petitioner challenged the award under 9 U.S.C. § 10(a)(2), and a plurality of the Court held that an award may be set aside where a failure to disclose a potential conflict creates an appearance of bias. *Id.* at 150, 89 S.Ct. 337. The Court commences its analysis by noting that the opinion in

*Commonwealth Coatings* was a plurality and thus not binding precedent. Other courts have evaluated both the plurality and concurring opinions and concluded that it is in fact Justice White's *concurrence* that guides future decisions. *See e.g. ANR Coal Co. v. Cogentrix of North Carolina*, 173 F.3d 493, 499 n. 3 (4th Cir. 1999) ("Because the vote of either Justice White or Justice Marshall was necessary to create a majority, courts have given this concurrence particular weight."); *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83 n. 3 (2d Cir.1984)("It might be thought that Justice Black's opinion represents the views of six members of the Court, for Justice White wrote that he was 'glad to join my Brother Black's opinion.' Because the two opinions are impossible to reconcile, however, we must narrow the holding to that subscribed to by both Justices White and Black."). The Court therefore turns to Justice White's concurrence for guidance, wherein he expressed a hesitancy to apply the same standards to judges and arbitrators, noting that "it is often because they are men of affairs, not apart from but of the marketplace, that [arbitrators] are effective in their adjudicatory function." *Commonwealth Coatings*, 393 U.S. at 150, 89 S.Ct. 337. Thus, while affirming the general principle requiring disclosure, Justice White cautioned against automatic disqualification, and expressed concern regarding the potential for "*suspicious or disgruntled* part[ies] seizing on [the undisclosed relationship] as a pretext for invalidating the award." *Id.* (emphasis added).

The Court now turns to the Fourth Circuit's pronouncement on the issue found in *ANR Coal Co. v. Cogentrix of North Carolina*, 173 F.3d 493 (4th Cir.1999). In *ANR*, one of the arbitrators worked for a law firm that performed sporadic work for a third party beneficiary of the contract at

the center of the arbitration. *Id.* at 496. Despite the fact that the arbitrator never personally represented the third party beneficiary, ANR requested that the arbitrator be stricken from the list of potential arbitrators. *Id.* When the request was denied ANR declined to use its preemptory strikes to strike the arbitrator at issue and he was subsequently placed on the arbitration pan el. *Id.* After the close of the arbitration, ANR learned that the extent of the arbitrator's relationship with the third party was more extensive than originally revealed, and ANR filed a civil complaint seeking vacatur, proceeding on two grounds: 1) that the failure to disclose the full extent of the relationship in and of itself warranted vacating the award; and 2) that the failure to disclose was proof of evident partiality and merited vacatur under 9 U.S.C. § 10(a)(2). *Id.* at 497, 500. In responding to ANR's first claim, the Fourth Circuit examined *Commonwealth Coatings* very closely and concluded that a "[f]ailure to disclose the sort of attenuated, nonsubstantial relationships at issue here" were not violative of the holdings in *Commonwealth Coatings.* *Id.* at 499. In consideration of ANR's second claim as it pertained to an inference of evident partiality stemming from a failure to disclose, the Fourth Circuit began by noting that the movant had a heavy and onerous burden to demonstrate that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration by putting forward facts that *objectively* demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives. *Id.* at 500–1. The court set forth the four factors previously mentioned to determine if a claimant has demonstrated evident partiality. The court concluded by noting that "[a] trivial relationship, even if undisclosed, will not justify vacatur of an arbitration award." *Id.* at 502.

■ An analysis of these four points leads to the inevitable conclusion that RZS has failed to present a claim of evident partiality. The Court is bewildered as to how RZS itself believed it had demonstrated evident partiality in a submission completely devoid of supporting case law indicating any authority whatsoever for this Court to find that the allegations raised by RZS amounted to evident partiality.

Despite the failings evident on the face of the pleadings, the Court evaluates the allegation of evident partiality grounded in Arbitrator Arnold's conversation with a PDVSA attorney at a professional association conference and the release of a draft award, under the four part test delineated in *ANR.* RZS argues for a finding of evident partiality based on four points: 1) the premature release of a draft copy of the arbitration award, and the failure to the ICC to conduct an investigation that was to RZS' satisfaction; 2) Mr. Arnold's attendance at a professional association conference were he engaged in conversation with a PDVSA attorney who was not involved in this litigation; 3) the failure of the ICC to reveal to RZS the contents of Mr. Arnold's letter to the ICC regarding the aforementioned meeting; and 4) that "the panel refused to admit relevant and material evidence in support of RZS' claims, and even struck from the record such evidence it had previously accepted to damage RZS' case." (Pl. Br. Vacate 9).

RZS has presented neither evidence nor argument that indicates that the arbitrators or the ICC had a personal interest in the matter. Assuming that RZS is accusing the arbitrators and the ICC of favoring PDVSA, any relationship between the accused parties is speculative and attenuated at best. It would be an even greater stretch for this Court to find that any relationship between the arbitrators and/or the ICC and PDVSA was connected to the arbitration.

The last point is perhaps the strongest for RZS, in that the "relationships" that form the basis for this analysis occurred during the course of the arbitration, and therefore there is some sort of temporal proximity. That being said, the Court concludes without hesitation that RZS has failed to come at all close to making out a case for evident partiality. RZS was given multiple opportunities to come forward with evidence and the "witness" who allegedly provided a draft copy of the decision to RZS so that the Court could evaluate whether there were facts demonstrating a question of whether there was proof of corruption, bribery, or bias. RZS refuses to even identify the alleged witness or to provide any facts supporting the witness' claim. Despite RZS' continued assertion that its inability to present a stronger case was causally connected to this Court's decision to decline to permit it to conduct post-award discovery, when it was granted leave to conduct additional limited discovery, RZS failed to provide its witness, and was unable to produce a scintilla of evidence that support its allegations.

Finally RZS argues that the Court cannot enforce the arbitral award because PDVSA paid all of the arbitration fees, and to enforce the award would constitute a violation of RZS' Fifth Amendment rights. However, RZS has provided *absolutely no legal authority* on this point. As it does consistently throughout its pleadings RZS launches a tirade as to the ways it believes it was aggrieved without expending any time or energy providing the court with any *case law or statutory basis* for providing the relief sought.

Having concluded that RZS has not shown a legal basis to vacate the arbitration award under any conceivable standard of review, it is necessary to briefly address and acknowledge the additional pleadings filed by RZS. On January 17, 2008, this Court entered an order requiring the parties to brief their positions on the pending motions to confirm/vacate by May 17, 2008 and scheduled a hearing on the matter for May 22, 2008. On May 12, 2008 the Court rescheduled the hearing for June 9, 2008, and RZS filed its position statement on May 20, 2008—three days late and without leave of court. On the date of oral argument, RZS presented a *copy* of a declaration from Gabriel Deed to both PDVSA and the Court. On June 18, 2008, RZS, without leave of court, filed a post-argument brief. On July 1, 2008, an original of the Deeb declaration was filed with the Court, and on August 29, 2008 RZS delivered a copy of a Motion to File Documents Under Seal and for Leave to Take Depositions. Subsequently, on October 7, 2008, the Court entered an Order providing for limited depositions, and that the depositions were to occur by November 21, 2008, and that the parties were permitted to submit supplemental pleadings based on the depositions provided that they were filed no later than December 6, 2008. Most importantly, the Order stated that "[t]he Court will not entertain tardy pleadings, nor are the parties entitled to file Oppositions to these supplements, and the Court will not entertain improperly filed Oppositions. *RZS v. PDVSA* No. 04–784 (E.D.Va. Oct. 7, 2008) (order allowing limited post-award depositions). Depositions of Arbitrators Lian and Arnold were taken and on December 5, 2008 PDVSA timely filed its Supplemental Memorandum in Support of Motion to Confirm Final Arbitral Award. On December 8, 2008, RZS filed a Memorandum Regarding Bias and Prejudice Revealed in Limited Discovery Permitted by the Court.[15] In this Memo-

**15.** December 6, 2008 fell on a Saturday, and for this reason, the filing was technically timely filed, however PDVSA claims that they were not properly served with RZS' Memo-

randum, RZS raises a series of unsubstantiated allegations, and issues that purport to demonstrate bias.[16] On December 23, 2008, in a final desperate attempt, RZS filed a Memorandum in Support of Motion for Order of Vacatur or, in the Alternative for Leave to take Further Discovery, founded on allegations of forgery based on perceived discrepancies in Mr. Arnold's signature found on various documents. PDVSA would go on to file an Objection to this Memorandum, stating among other things that RZS never served PDVSA with a copy of the December 23, 2008 Memorandum and that consideration of the pleading was expressly barred by the terms of the Court's October 7, 2008 Order and finally, in the alternative, in an abundance of caution, PDVSA offered its explanation for any potential differences in Mr. Arnold's signature.

The Court has considered each of these documents despite the arguably propriety of doing so, and finds each to be without merit, or bearing upon the outcome of this matter. The Post–Argument brief is merely RZS' attempt at re-arguing the issue of evident partiality and post-award discovery. RZS presents no substantively new information in this pleading, but merely provides itself with an additional opportunity to continue its diatribe as to its dissatisfaction with the court's prior rulings. The Declaration of Gabriel Deeb presents no substantive information whatsoever. It contains absolutely no concrete or first hand knowledge that is determinative of this case. The declaration has been presented to the Court in a weak effort to support RZS' issues regarding the premature release of the draft award. However after reading the declaration, the Court finds itself in the same place it was before. All it can know for certain is that RZS' claims that it received a draft a copy of the award. We do not know how, or from whom. We have no information regarding how it was leaked. We have no concrete or verifiable information about how it was obtained. The Court can make no substantive or significant decisions based upon the information contained in this declaration. RZS has submitted a Motion essentially requesting to have a witness appear in the Southern District of Miami to give secret testimony in a manner such that his identity (not even his name—RZS requests that the witness use an alias) is not revealed to the vast majority of the players in this litigation, and to take the depositions of the arbitrators in this manner as well. For the reasons previously stated, the Court the Court declines to grant the motion for this witness to provide testimony in this most unorthodox manner. RZS has presented no reason for the Court to do so.[17] RZS has failed to indicate to the Court why the witness cannot appear in this jurisdiction, and has failed to provide the court with definite and verifiable information that would allow for this Court to conclude that such extraordinary measures are not only proper but necessary to take the rare step of circumventing the right of parties and the Court to observe witness testimony. Finally, in keeping with its clear and express mandate in the October 7, 2008 Order, this Court will not consider

randum and that only after repeated requests for a copy did they receive one.

16. RZS takes issue with the production of Arbitrator Arnold's July 24, 2004 letter that was subsequently released to it by this Court. Furthermore RZS perceives impropriety in Mr. Arnold's retention of counsel, and PDVSA's involvement in said retention, and goes on to continue its familiar allegation of unfairness based on PDVSA's payment of the entire costs of the arbitration.

17. The Court means to say that RZS has literally provided no reason to do so. The motion is devoid of any argument on this point, let alone any indication of a legal basis to do so.

RZS' latest untimely filed attack on Mr. Arnold.

## III. CONCLUSION

The Court holds that the Inter–American Convention on International Arbitration provides the framework for a determination of whether or not to confirm or vacate this award because this is an international arbitration, the parties governed by the award are citizens of signatory nations to the Convention, and the terms and provisions of the Federal Arbitration Act regarding vacatur are in conflict with Article V of the Inter–American Convention. Furthermore the Court holds that RZS failed to present allegations that would justify vacatur under the Inter–American Convention because neither the conversation between Arbitrator Arnold and a PDVSA attorney at a professional association conference, nor the premature release of a draft version of the arbitration award, nor the payment by PDVSA of the entire costs of the arbitration, as presented to this Court by RZS constitute a cause for vacatur under any of the reasons listed in Article V. Additionally, the Court concludes that if it were to find that the Federal Arbitration Act governed the review of RZS' claims, RZS has failed to demonstrate grounds under the FAA to warrant vacating the arbitration award. Therefore the Court finds that there is no reason to vacate the arbitration award, and the confirmation is appropriate.

For the foregoing reasons, it is hereby

ORDERED that Plaintiff RZS Holdings AVV's Motion to Vacate Arbitration Award is DENIED. It is further

ORDERED that Defendant PDVSA Petroleos S.A.'s Motion to Confirm Arbitration Award is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.